**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNLIMITED CELLULAR, INC.,

        Plaintiff,

        v.

RED POINTS SOLUTIONS SL and RED
POINTS INC.,

        Defendants.

Case No: 7:21-cv-10638-NSR

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS RED POINTS SOLUTIONS SL'S AND RED POINTS INC.'S**
**MOTION TO DISMISS AND FOR MANDATORY FEE-SHIFTING**

---

Rachel Maimin
Christopher M. Schafbuch
**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas, 17th Floor
New York, NY 10020
Tel:  212.419.6962
Fax:  973.597.2551
rmaimin@lowenstein.com
cschafbuch@lowenstein.com

*Attorneys for Defendants Red Points*
*Solutions SL and Red Points Inc.*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................... ii

1.     Count I (defamation):  eBay's and Red Points's communications concern a common interest, and there are no plausible allegations of actual malice ..................... 1

2.     Count II (tortious interference): Plaintiff fails to allege a "breakdown in the business relationship" ................................................................................ 3

3.     Count III (Lanham Act):  Plaintiff's theory of causation is too indirect because Red Points did not "cause consumers to withhold trade" from the plaintiff ................. 4

4.     Count IV (N.Y. GBL § 349):  Plaintiff's two-tiered theory of harm fails as a matter of law ...................................................................................... 6

5.     Count V (aiding and abetting):  there is no underlying unfair competition and Plaintiff fails to allege any co-conspirators ................................................... 8

6.     Red Points should recover its attorneys' fees and costs if the Complaint is dismissed; Fed. R. Civ. P. 11 does not displace the substantive provisions of New York's anti-SLAPP law ................................................................ 9

CONCLUSION ............................................................................................... 10

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                   **Page(s)**

*3B Medical, Inc. v. SoClean, Inc.*,
    857 F. App'x 28 (2d Cir. 2021) .........................................................................................4, 5, 6

*Adelson v. Harris*,
    774 F.3d 803 (2d Cir. 2014)..................................................................................................10

*Adweek LLC v. Carnyx Group Ltd.*,
    No. 18-cv-9923, 2019 WL 8405297 (S.D.N.Y. June 3, 2019) ..............................................6

*Banner Bank v. Smith*,
    30 F.4th 1232 (10th Cir. 2022) ...........................................................................................10

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
    3 N.Y.3d 200 (2004) ...........................................................................................................6, 7

*Carson Optical, Inc. v. Prym Consumer USA, Inc.*,
    11 F. Supp. 3d 317 (E.D.N.Y. 2014) .....................................................................................8

*City of New York v. Smokes-Spirits.Com, Inc.*,
    12 N.Y.3d 616 (2009) .........................................................................................................6, 7

*Colligan v. Activities Club of New York, Ltd.*,
    442 F.2d 686 (2d Cir. 1971)...................................................................................................4

*Diamond Resorts U.S. Collection Dev., LLC v. Pandora Mktg., LLC*,
    No. 20-cv-5486, 2020 WL 8768056 (C.D. Cal. Nov. 9, 2020) ............................................5

*Eminah Properties LLC v. Energizer Holdings, Inc.*,
    531 F. Supp. 3d 593 (E.D.N.Y. 2021) ...............................................................................3, 4

*Global Packaging Servs., LLC v. Global Printing and Packaging*,
    248 F. Supp. 3d 487 (S.D.N.Y. 2017).....................................................................................2

*Hillel v. Obvio Health USA, Inc.*,
    No. 20-cv-4647, 2021 WL 229967 (S.D.N.Y. Jan. 21, 2021) ..............................................2

*Hillel v. IQVIA, Inc.*,
    No. 21-cv-666, 2022 WL 905852 (2d Cir. Mar. 29, 2022)................................................1, 2

*King Cnty., Wash. v. IKB Deutsche Industriebank AG*,
    863 F. Supp. 2d 288 (S.D.N.Y. 2012).....................................................................................9

*Kyszenia v. Ricoh USA, Inc.*,
    583 F. Supp. 3d 350 (E.D.N.Y. 2022) .....................................................................................8

*Josie Maran Cosmetics, LLC v. Shefa Group LLC*,
No. 20-cv-3702, 2022 WL 3586746 (E.D.N.Y. Aug. 22, 2022) ...............................4

*La Liberte v. Reid*,
966 F.3d 79 (2d Cir. 2020) ...............................................................................9, 10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014).........................................................................................4, 5

*Nat'l Academy of TV Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*,
551 F. Supp. 3d 408 (S.D.N.Y. 2021).............................................................9, 10

*Palin v. New York Times Co.*,
510 F. Supp. 3d 21 (S.D.N.Y. 2020)....................................................................10

*Radiancy, Inc. v. Viatek Consumer Prod. Grp., Inc.*,
138 F. Supp. 3d 303 (S.D.N.Y. 2014)....................................................................3

*RFP LLC v. SCVNGR, Inc.*,
788 F. Supp. 2d 191 (S.D.N.Y. 2011)....................................................................4

*Roy Export Co. Establishment of Vaduz, Liechtenstein v. Columbia Broadcasting
Sys., Inc.*,
672 F.2d 1095 (2d Cir. 1982)................................................................................8

*Thai v. Cayre Group, Ltd.*,
726 F. Supp. 2d 323 (S.D.N.Y. 2010)................................................................1, 2

*Wyndham Vacation Ownership v. Reed Hein & Assocs., LLC*,
No. 6:18-cv-2171, 2019 WL 3934468 (M.D. Fla. Aug. 20, 2019)...........................5

**Statutes**

New York General Business Law § 349...................................................................6, 7

New York Civil Rights Law § 76-a(1)(b)...............................................................9, 10

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ...........................................................1, 3, 9

Federal Rule of Civil Procedure 37(b)......................................................................10

Defendants Red Points Solutions SL and Red Points Inc. (collectively, "Red Points") respectfully submit this reply memorandum of law in further support of their motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  For all of the reasons discussed below and in Red Points's principal memorandum of law ("Defs.' Mem."), the Court should grant this motion, dismiss all claims with prejudice, and award Red Points its costs and attorneys' fees.

**1.      Count I (defamation):  eBay's and Red Points's communications concern a common interest, and there are no plausible allegations of actual malice.**

As discussed in Red Points's opening brief, two of the biggest flaws with Plaintiff's defamation claim are the common interest privilege and the lack of any plausible allegation of malice.  Nothing in the opposition brief cures these issues.  Plaintiff claims, without citing legal authority, that "the question of whether a privilege applies cannot be decided at this stage of the case."  Pl.'s Mem. of Law in Opp'n ("Pl.'s Opp'n") at 6.  That is wrong as a matter of law.  Courts in this circuit have granted motions to dismiss defamation claims when, as here, the complaint fails to show that the common interest does not apply.  *See, e.g.*, *Thai v. Cayre Group, Ltd.*, 726 F. Supp. 2d 323, 335 (S.D.N.Y. 2010) (granting motion to dismiss defamation claim).  In *Thai*, like this case, the defamation claim "fail[s] because the allegedly defamatory statement falls within the common interest privilege."  *Id.*  And the Complaint "fails to adequately plead facts to support the inference that the statement was made maliciously and for the ***sole*** purpose of defaming" Plaintiff. *Id.* (emphasis added); *see* Defs.' Mem. at 4 n.3 ("Red Points has submitted (on behalf of and at the direction of its clients) more than 150 VeRO reports about Plaintiff's eBay listings. At least 140 of the notices correctly identified IP infringement, and Plaintiff did not contest those notices."); *see also id.* at 2-3, 8-9 & n.1.

In arguing against the common interest privilege, Plaintiff relies on the unpublished decision in *Hillel v. IQVIA, Inc.*, No. 21-cv-666, 2022 WL 905852 (2d Cir. Mar. 29, 2022).  In that

case, two companies—IQVIA and Obvio—were in the process of negotiating a large deal.  *See*

*Hillel v. Obvio Health USA, Inc.*, 2021 WL 229967, at *1-2 (S.D.N.Y. Jan. 21, 2021).  Soon after

Ms. Hillel began working on the deal, several IQVIA employees made allegedly defamatory

statements about her, such as that she "had been fired from [IQVIA's predecessor]," *id.* at *1; or

that they "would not attend any meetings with ObvioHealth if Ms. Hillel was going to be present,"

*id.* at *2.  These statements, which concerned Ms. Hillel's "professional reputation," allegedly

were intended "to undermine Obvio's efforts to consummate deals with third parties that would

have been competitive to IQVIA's services."  *Id.* at *2.  On appeal, the Second Circuit agreed that

the two companies shared a common interest, but questioned whether "the challenged statements

concerned a subject of common interest to IQVIA and Obvio," *i.e.*, "negotiating and executing a

large deal."  *Hillel*, 2022 WL 905852, at *2.  If so, the privilege would apply.  The court held that

the privilege did not apply because the statements concerned Ms. Hillel's character and

competence, not the deal negotiation.

      Here, by contrast, Red Points's and eBay's common interest—*i.e.*, eBay's Verified Rights

Owner Program—***was*** the very "subject matter of [the allegedly defamatory] communications."

*Id.* at *2 (quoting *Loewinthan v. Le Vine*, 299 N.Y. 372, 375 (1949)).  As explained in Red Points's

opening brief, eBay actually invites owners of intellectual property to report listings that may

infringe on their rights.  *See* Defs.' Mem. at 6 (quoting eBay's Verified Rights Owner Program)

("We appreciate your help in identifying and reporting listings or product pages . . . .").  Because

eBay's and Red Points's communications about the VeRO reports are privileged, Plaintiff's

"allegations of malice are not entitled to a presumption of truthfulness." *Thai*, 726 F. Supp. 2d at

335-36; *see also Global Packaging Servs., LLC v. Global Printing and Packaging*, 248 F. Supp.

3d 487, 495 (S.D.N.Y. 2017) (Román, J.) ("[T]his Court, even on a motion to dismiss, is not

required to accept conclusory allegations—particularly allegations such as those asserted here, characterizing or attributing a state of mind of another person.").

2.     **Count II (tortious interference): Plaintiff fails to allege a "breakdown in the business relationship."**

As Red Points also noted in its opening brief, just last year, in the United States District Court for the Eastern District of New York, the court considered and dismissed under Rule 12(b)(6) allegations of tortious interference substantially identical to the allegations at issue here.  *See Eminah Properties LLC v. Energizer Holdings, Inc.*, 531 F. Supp. 3d 593, 606-07 (E.D.N.Y. 2021); *see also* Defs.' Mem. at 13.  Plaintiff tries to escape *Eminah*'s holding by incorrectly claiming that:

> [*Eminah*] did not involve any allegation that the false reports at issue resulted in any action by eBay that could be deemed a disruption of the plaintiff's sale of products on eBay.  That is nothing like what happened here, where Plaintiff's sale of products was suspended or terminated.

Pl.'s Opp'n at 13 (citation omitted).  Again, Plaintiff's claim is false.  In fact, the *Eminah* plaintiff "alleg[ed] that the defendants' actions caused the removal of 'listing content,' placed 'black marks' on their eBay accounts, and put their accounts at risk of suspension."  531 F. Supp. 3d at 607.  The complaint in that case expressly alleges that "Defendant's actions interfered with Plaintiffs' business relationship with eBay and proximately *caused the removal of Plaintiff's listing content*."  *Eminah* Pls.' Second Am. Compl., No. 1:20-cv-0148, ECF No. 22 (E.D.N.Y. July 08, 2020) ¶ 214 (emphasis added).

The *Eminah* opinion has already analyzed—and dismissed—the same exact claim made here about an owner of intellectual property submitting a report under eBay's Verified Rights Owner Program.  Further, *Eminah* drew guidance from the decisions of courts in this District analyzing similar claims.  *See id.* at 607 (quoting *RFP LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191 (S.D.N.Y. 2011) (granting motion to dismiss tortious interference claim), and *Radiancy, Inc. v. Viatek Consumer Prod. Grp., Inc.*, 138 F. Supp. 3d 303 (S.D.N.Y. 2014) (same)).  "Interference

that does not rise to the level of a breach of agreement or severance of the relationship does not amount to an injury sufficient to make a tortious interference claim." *RFP*, 788 F. Supp. 2d at 198.

Plaintiff cites one case, *Josie Maran Cosmetics, LLC v. Shefa Group LLC*, that declined to dismiss a tortious interference claim under similar circumstances.  No. 20-cv-3702, 2022 WL 3586746 (E.D.N.Y. Aug. 22, 2022).  But the cursory analysis in *Josie Maran*, *see id.* at *9, unlike that in *Eminah*, fails to consider the many cases from the Southern District of New York that dismissed claims when the conduct did not "caus[e] a breakdown in the business relationship." *Eminah*, 531 F. Supp. 3d at 607 (quoting *RFP*, 788 F. Supp. 2d at 198).  Plaintiff's claim should likewise be dismissed.

### 3. Count III (Lanham Act):  Plaintiff's theory of causation is too indirect because Red Points did not "cause consumers to withhold trade" from the plaintiff.

As previously stated, Plaintiff fails to allege sufficient proximate cause to support a cognizable injury under the Lanham Act.  Critically, the injury must "'flow[] directly from the deception wrought' and such injury 'occurs when deception of consumers causes them to withhold trade from the plaintiff.'"  *3B Medical, Inc. v. SoClean, Inc.*, 857 F. App'x 28, 29 (2d Cir. 2021) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014)).  Here, the deception allegedly wrought is Red Points "misrepresent[ing] the capabilities of the Red Points software with respect to distinguishing between authentic products and counterfeit products."[1] Compl. ¶ 75.  The question, then, is whether that misrepresentation caused consumers (*i.e.*, Red Points's clients Oyo Fitness and Sanho) "to withhold trade from the plaintiff."  *SoClean*, 857 F. App'x at 29.  The answer is no.

---

[1]     Even if such a statement "hoodwinked" a consumer "into purchasing a disappointing product," that person "cannot invoke the protection of the Lanham Act."  *Lexmark*, 572 U.S. at 132.  On this point the parties agree.  *See* Pl.'s Opp'n at 15 (citing *Colligan v. Activities Club of New York, Ltd.*, 442 F.2d 686, 692-93 (2d Cir. 1971)).

This case is nothing like *Lexmark*, which Plaintiff incorrectly says involved advertising statements that "had nothing to do with Static Control's components and those statements did not cause Static Control's customers to withhold trade from Static Control." Pl.'s Opp'n at 17. In fact, Static Control alleged that Lexmark had "'sent letters to most of the companies in the toner cartridge remanufacturing business' ***falsely advising those companies*** that it was illegal to sell refurbished Prebate cartridges and, in particular, ***that it was illegal to use Static Control's products*** to refurbish those cartridges." *Lexmark*, 572 U.S. at 123 (emphasis added) (quoting Sup. Ct. App.). Static control, unlike the Plaintiff here, alleged "that Lexmark's misrepresentations had 'proximately caused and [we]re likely to cause injury to [Static Control] by diverting sales from [Static Control] to Lexmark.'" *Id.* (quoting Sup. Ct. App.).

Plaintiff tries twice more to conflate its theory of harm with legitimate Lanham Act claims. *See* Pl.'s Opp'n at 17-18 (discussing *Wyndham Vacation Ownership v. Reed Hein & Assocs., LLC*, No. 6:18-cv-2171, 2019 WL 3934468 (M.D. Fla. Aug. 20, 2019) and *Diamond Resorts U.S. Collection Dev., LLC v. Pandora Mktg., LLC*, No. 20-cv-5486, 2020 WL 8768056 (C.D. Cal. Nov. 9, 2020)). But, like *Lexmark*, these cases are inapposite. In *Wyndham*, the plaintiffs, a collection of Wyndham resorts and timeshare properties, alleged that the defendants used false advertising to deceive ***Wyndham's customers*** into breaching their timeshare agreements with Wyndham. *See Wyndham*, 2019 WL 3934468, at *1. In other words, the *Wyndham* defendants caused owners of Wyndham timeshare properties "to withhold trade from the plaintiff." *SoClean*, 857 F. App'x at 29. *Diamond Resorts* is no different. That case, just like *Wyndham*, involved allegations that the defendants used false representations to trick the ***plaintiff's clients*** into breaching their contracts with the plaintiff. *See Diamond Resorts*, 2020 WL 8768056, at *1-2.

No doubt those theories of harm are actionable under the Lanham Act. In both *Wyndham* and *Diamon Resorts* the false advertising directly caused consumers "to withhold trade from the

5

plaintiff." *SoClean*, 857 F. App'x at 29.  Here, however, Plaintiff alleges that Red Points deceived *its own* customers—brands that do not have any current or prospective business relationship with Plaintiff—about the quality of Red Points's software and services.  *See* Compl. ¶¶ 75-77.  Red Points's advertising statements could not possible have caused any consumer "to withhold trade" from Plaintiffs.  *SoClean*, 857 F. App'x at 29; *see also, e.g.*, *Adweek LLC v. Carnyx Group Ltd.*, No. 18-cv-9923, 2019 WL 8405297, at *2 (S.D.N.Y. June 3, 2019) (granting motion to dismiss Lanham Act claims).[2]

### 4.    Count IV (N.Y. GBL § 349):  Plaintiff's two-tiered theory of harm fails as a matter of law.

As discussed, Plaintiff's claim under N.Y. GBL § 349, like its deficient Lanham Act claim, also fails because the injury is "derivative." *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 3 N.Y.3d 200, 208 (2004).  Plaintiff must acknowledge that its theory of harm "is founded on [Red Points's] clients being deceived into implementing automated anti-counterfeiting enforcement on the Red Points platform" which, in turn, "resulted in [Red Points]'s clients taking action that [']directly['] harmed Plaintiff."  Pl.'s Opp'n at 19.  This is precisely the type of "derivative harm" that the New York Court of Appeals rejected in *City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 622 (2009).  This Court should reject it too.

In *Smokes-Spirits*, New York City tried to sue out-of-state cigarette sellers under N.Y. GBL § 349.  12 N.Y.3d at 620.  New York City has some of the highest cigarette taxes in the country, and it alleged that the out-of-state sellers "misrepresented that their Internet cigarette sales are 'tax free,' [so] that their customers did not have to pay cigarette taxes." *Id.*  "Due to these 'materially deceptive and misleading' statements, the City allege[d] that some New York consumers were

---

[2]     Plaintiff claims that *Adweek* "does not stand for the proposition Defendants argue."  Pl.'s Opp'n at 16 n.2.  Tellingly, however, Plaintiff does not offer its view of the correct reading.

duped into purchasing cigarettes over the Internet in reliance on an entirely illusory tax savings." *Id.* "The City claim[ed] that defendants' deceptive statements . . . injured it in an undetermined amount of unpaid cigarette taxes." *Id.* The Court rejected this theory of causation "because [the] claimed injury, in the form of lost tax revenue, is entirely derivative of injuries that it alleges were suffered by misled consumers who purchased defendants' cigarettes over the Internet." *Id.*

Plaintiff correctly notes that *Smokes-Spirits* involves a different product. *See* Pl.'s Opp'n at 19. It dealt with cigarettes and this case involves software. But the product is not the point. This case and *Smokes-Spirits* both present the same two-tiered theory of causation that courts have rejected for decades. Indeed, Plaintiff's own explanation of causation is virtually interchangeable with New York City's faulty theory in *Smokes-Spirits*:

> Plaintiff's Section 349 claim is not founded on injury derived from the harm to consumers who were deceived into purchasing Defendants' [cigarettes], as Defendants argue. Rather, it is founded on those clients being deceived into [not paying New York City cigarette taxes]. *See* TAC ¶¶ 85-87. That deception does not result in any harm to the clients. In fact, they probably benefit because [they do not pay New York City taxes]. Rather, the deception resulted in Defendants' clients taking action that directly harmed [New York City].

Pl.'s Opp'n at 19.[3] The court in *Blue Cross* also considered, and rejected, a two-tiered theory of causation. 3 N.Y.3d at 204-08. There, tobacco companies allegedly misled consumers about the harmful and addictive properties of cigarette smoking. *See id.*, 3 N.Y.3d at 204. Those consumer were injured, which in turn "directly," as Plaintiff would put it, caused losses to the consumers' insurance company. The court held that "[a]lthough Empire actually paid the costs incurred by its

---

[3]      This demonstration of identicalness works in reverse, too. *Compare* Pl.'s Opp'n at 19 *with Smokes-Spirits*, 12 N.Y.3d at 620 ("[C]ertain defendants' Web sites have allegedly misrepresented that their [anti-counterfeiting enforcement software works]. Due to these 'materially deceptive and misleading' statements, the [Plaintiff] alleges that some [Red Points] consumers were duped into purchasing [the software] over the Internet in reliance on an entirely illusory [functionality]. . . . The [Plaintiff] claims that defendants' deceptive statements . . . have injured it in an undetermined amount of [lost revenue and reputational injury]. For this injury, the [Plaintiff] seeks redress under General Business Law § 349 (h).").

subscribers, its claims are nonetheless indirect because the losses it experienced arose wholly as a result of smoking related illnesses suffered by those subscribers." *Id.* at 207.

Whether cigarettes, software, or cameras, *see Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 363 (E.D.N.Y. 2022), the two-tiered theory of causation fails as matter of law.

**5.    Count V (aiding and abetting):  there is no underlying unfair competition and Plaintiff fails to allege any co-conspirators.**

Plaintiff's opposition brief utterly fails to address Red Points's arguments that (1) the Complaint fails to allege underlying unfair competition, *see* Defs.' Mem. at 19-20; (2) there are no well-pled allegations that Red Points knew of any underlying unfair competition, *see id.* at 21; and (3) Plaintiff fails to allege that Red Points "substantially assisted" any underlying tort, *see id.* at 21-22.  Instead, Plaintiff says only that it pled this claim in the alternative, and then cites to a forty-year-old case noting the "'incalculable variety' of illegal practices falling within the unfair competition rubric." *Roy Export Co. Establishment of Vaduz, Liechtenstein v. Columbia Broadcasting Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982).[4]  The more recent authorities, however, explain that an unfair competition claim is "directed at conduct by which a defendant has misappropriated the labors and expenditures of another." *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 335 (E.D.N.Y. 2014) (quoting *Lyons Partnership, L.P. v. D & L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 115 (E.D.N.Y. 2010)).  Furthermore, "a plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief as well as make a showing of bad faith." *Id.* (quoting *Lyons*, 702 F. Supp. 2d at 115).  Plaintiff has failed to allege either thing.

---

[4]    Setting aside *Roy*'s age, it nonetheless describes conduct that is fundamentally different from Red Points's alleged conduct.  672 F.2d at 1105 (describing unfair competition as "taking 'the skill, expenditures and labors of a competitor,'" "misappropriati(ng) for the commercial advantage of one person . . . a benefit or 'property' right belonging to another," "or simply as 'endeavoring to reap where (one) has not sown'") (citations omitted).

In any case, Plaintiff did not bring a claim of unfair competition.  Plaintiff claims that Red Points has aided and abetted unfair competition.  And "[f]or claims of aiding and abetting to survive a motion to dismiss, they must be pled with some level of specificity and may not consistent solely of a broad, conclusory, repetition of the elements of aiding and abetting."  *King Cnty., Wash. v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 299-300 (S.D.N.Y. 2012).  The allegations fall well short of this standard, so the claim should be dismissed.

6.      **Red Points should recover its attorneys' fees and costs if the Complaint is dismissed; Fed. R. Civ. P. 11 does not displace the substantive provisions of New York's anti-SLAPP law.**

*La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020) is the Second Circuit's most recent word on the applicability of state anti-SLAPP statutes to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  In that case, the Second Circuit rejected anti-SLAPP fees under California law because the statute "awards attorneys' fees ***only*** to 'a prevailing defendant ***on a special motion to strike***."  *Id.* at 88-89 (alteration in original) (quoting Cal. Civ. Pro. Code § 425.16(c)(1).  "So Reid cannot recover attorneys' fees based on the district court's Rule 12(b)(6) dismissal."  The Second Circuit expressly noted, however, that "the California Legislature presumably could have awarded attorneys' fees to the prevailing party in any defamation action, but it chose not to do so."  *Id.* at 89 n.6.  The New York State Assembly, on the other hand, has done just that.  Unlike the California statute, New York's anti-SLAPP law is not limited to special motions.  It authorizes an award of attorneys' fees upon a "claim," defined in part as "any . . . filing requesting relief," such as a motion to dismiss.  N.Y. Civ. Rights Law § 76-a(1)(b).

Section 70-a is a state procedural rule that generally governs adjudication of motions to dismiss filed in New York state courts.  *See, e.g.*, *Nat'l Academy of TV Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 431 & n.16 (S.D.N.Y. 2021).  Red Points does not disagree that Section 70-a probably is inapplicable in federal court.  *See* Pl.'s Opp'n at 21.  It

is, however, "undisputed . . . that a federal court sitting in diversity must apply § 76-a because it is a substantive, rather than a procedural, provision." *Palin v. New York Times Co.*, 510 F. Supp. 3d 21, 26 (S.D.N.Y. 2020) (Rakoff, J.).[5]

Further, Federal Rule of Civil Procedure 11 is procedural and does nothing to change the Court's obligation to apply state substantive law in this diversity action. *See, e.g.*, *Palin*, 510 F. Supp. 3d at 26; *Banner Bank v. Smith*, 30 F.4th 1232, 1240-41 (10th Cir. 2022).[6]  Red Points therefore requests attorneys' fees, as authorized by N.Y. Civ. Rights § 76-a, should it prevail on its motion to dismiss these specious claims.

## CONCLUSION

For all of these reasons, the Court should dismiss all of Plaintiff's claims with prejudice and award Red Points its attorneys' fees and costs.

Dated:  New York, New York          Respectfully submitted,
       November 10, 2022

                          By:    */s/ Rachel Maimin*
                                Rachel Maimin
                                Christopher M. Schafbuch
                                **LOWENSTEIN SANDLER LLP**
                                1251 Avenue of the Americas, 17th Floor
                                New York, NY 10020
                                Tel:  212.419.6962
                                Fax:  973.597.2551
                                rmaimin@lowenstein.com
                                cschafbuch@lowenstein.com

                                *Attorneys for Defendants Red Points*
                                *Solutions SL and Red Points Inc.*

---

[5]     *See also Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (affirming the district court's application of certain substantive provisions of Nevada's anti-SLAPP law); .

[6]     Even if Rule 11 applied, it would not—as Plaintiff contends—prohibit "an award of fees without the protections of Rule 11's 21-day safe-harbor provision."  Pl.'s Opp'n at 21.  A federal court may assess fees for a variety for various reasons, including its inherent power to manage the proceedings before it.  *See* Fed. R. Civ. P. 37(b).