UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNLIMITED CELLULAR, INC.,

                                    Plaintiff,

        -against-

RED POINTS SOLUTIONS SL and RED POINTS
INC.,

                                    Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _6/14/2023_____

21-cv-10638 (NSR)

ORDER & OPINION

NELSON S. ROMÁN, United States District Judge:

Plaintiff Unlimited Cellular, Inc. ("Plaintiff") brings this action against Red Points Solutions SL ("RP Solutions") and Red Points Inc. ("RP Inc." and collectively with Red Points Solutions, "Red Points" and the "Defendants"), asserting claims for Defamation, Tortious Interference with Prospective Business Relations, False Advertising under 15 U.S.C. § 1125(a) (the "Lanham Act"), violations of New York's Deceptive Acts and Practices statute (N.Y General Business Law § 349 ("GBL § 349")), and Aiding and Abetting Common Law Unfair Competition. (ECF No. 28 ("TAC").)

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint, which is brought pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted (the "Motion"). (ECF No. 31.) For the following reasons, Defendants' Motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

### I.    Factual Background

The following facts as taken from Plaintiff's Third Amended Complaint are accepted as true and construed in the light most favorable to Plaintiff for purposes of this motion.

Plaintiff is an online non-authorized reseller of consumer products organized as a New York corporation with its principal place of business in Newburgh, New York. (TAC ¶¶ 1, 11, 37.) RP Solutions is a Spanish company with its principal place of business in Spain. (*Id.* ¶ 2.) RP Inc. is a Delaware corporation with its principal place of business at the same location as RP Solutions, in Spain. (*Id.* ¶ 3.) RP Inc. is an agent of RP Solutions which conducts business within the United States, and more specifically, in the state of New York. (*Id.*)

Red Points provides brand protection services through their automated software platform, which searches the internet for intellectual property infringements for their clients, reporting violations to the e-commerce website on which they are found (these violation reports are termed "VeRo reports"). (*Id.* ¶¶ 18-19.) Plaintiff lawfully operates as a non-authorized reseller on e-commerce website eBay.com ("eBay") (*Id.* ¶ 11.) eBay responds to such reported infringements by automatically removing the reported listing without warning to the seller, and reinstatement of the listing requires the trademark owner to retract the report. (*Id.* ¶ 13.) The reporting party is not required to submit any proof that the reported infringement is valid before removing the reported listing. (*Id.* ¶ 15.) When Red Points submits reports of intellectual property rights infringement to eBay, they certify that they have a good faith basis for the reports and that the reports are accurate. (*Id.* ¶ 27.) Red Points submits the reports of infringement without requiring their clients to confirm that the product listed is a counterfeit. (*Id.* ¶ 28.) E-commerce websites may suspend or terminate entire accounts based on alleged infringements, but they will not honor removal requests where the product is authentic. (*Id.* ¶¶ 16, 29.)

Red Points creates an email address for their clients, which is provided to e-commerce websites in connection with reports of intellectual property infringements. (*Id* ¶ 32.) When an affected seller writes to the email address provided, an automated form response is sent which demands proof that the accused items are authentic. (*Id.* ¶ 33.) Red Points has no mechanism in place to ensure prompt retraction of erroneous reports even when the rights owner agrees to retract the report. (*Id.* ¶ 35.)

On November 2nd and 5th of 2021 Red Points reported two of Plaintiff's listings on eBay as infringing on the intellectual property rights of two of Red Points' clients. (*Id.* ¶¶ 38, 42.)

At the time of the November 2, 2021 report (the "November 2nd Report"), Red Points reported to eBay that Plaintiff's inventory of "Hyperdrive USB-C Hub Adapter for IPAD Pro, Macbook Pro/Air, Power 9-in-1" ("USB Hub") was counterfeit, resulting in the removal of the listing. (*Id.* ¶ 42.) No verification of counterfeit status was requested from Red Points' client before submitting the report. (*Id.* ¶ 44.)  That same day, Plaintiff sent an email to Red Points' client Sanho Corporation's Red Points email address confirming authenticity of the product and asking why the listing was reported. (*Id.* ¶ 46.) Defendants responded two days later with their form response. (*Id.*) Red Points refused to withdraw the report regarding the USB Hub despite the verifiable authenticity of the product listed by Plaintiff. (*Id.* ¶ 47.)

At the time of the November 5, 2021 report (the "November 5th Report"), Red Points reported to eBay that Plaintiff's inventory of "OYO Fitness Full Body Portable Equipment Training Set" ("Training Set") was counterfeit, resulting in the removal of the listing. (*Id.* ¶ 38.) No verification of counterfeit status was requested from Red Points' client before submitting the report. (*Id.* ¶ 40.) On November 17, 2021, Red Points retracted only this November 5, 2021 report from eBay as baseless; the November 2, 2021 report was not retracted (*Id.*)

3

## II.      Procedural Background

Plaintiff commenced the instant action on December 13, 2021 by filing the Complaint. (ECF No. 1.) By agreement among the parties, an Amended Complaint, Second Amended Complaint, and Third Amended Complaint were filed on January 11, 2022, March 28, 2022, and August 1, 2022, respectively. (*See* ECF Nos. 7, 17, and 28.)

Following Plaintiff's filing of the Third Amended Complaint, Defendants filed a request to file a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 29.) The Court granted Defendants' request (ECF No. 30), and Defendants filed their Motion to Dismiss on November 10, 2022. (ECF NO. 31.) The parties filed their respective papers in support of, and in opposition to, Defendants' Motion to Dismiss that same day. (ECF Nos. 32-35.) Defendants' Motion to Dismiss is at issue here.

## <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 662, 678 (quoting *Twombly*, 550 U.S. at 555). The critical inquiry is whether the plaintiff has pled sufficient facts to

nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I.      *Defendants' Motion to Dismiss Plaintiff's Claim for Defamation is Denied*

To state a claim for Defamation under New York law, a plaintiff must allege: (i) a false statement of fact of and concerning the plaintiff, (ii) published to a third party without authorization or privilege, (iii) made with the applicable level of fault ("negligence or actual malice depending on the status of the [defamed] party") on the part of the publisher, (iv) that either caused special harm or constitutes defamation *per se. Electra v. 59 Murray Enters.*, 987 F.3d 233, 259 (2d Cir. 2021); *see Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 528 (2d Cir. 2018) (quoting *Albert v. Loksen*, 239 F.3d 256, 265–66 (2d Cir. 2001)). A plaintiff must plead the defamatory statements with some particularity. N.Y. C.P.L.R. 3016(a) ("In an action for libel or slander, the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally." (emphasis added)). Under Federal Rule of Civil Procedure 8's liberal pleading standards, this requires a plaintiff to "identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published." *Neal v. Asta Funding, Inc.*, 13-CV-2176 (VB), 2014 WL 3887760, at *3 (S.D.N.Y. June 17, 2014).

First, Plaintiff adequately pleads a false statement of fact made by Red Points "of and concerning" Plaintiff. "The 'of and concerning' element in defamation actions requires that the allegedly defamatory comment refer to the plaintiff." *Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.,* 18-CV-4921 (PGG) (KHP), 2019 WL 1434719, at *9 (S.D.N.Y. Mar. 31, 2019) (quoting

*Brady v. Ottaway Newspapers, Inc.,* 84 A.D.2d 226, 228 (2d Dept. 1981). Red Points submits these VeRo reports directly to eBay on behalf of their clients, and as a matter of policy, the reported listings are removed by eBay. (TAC ¶¶ 13, 27.) Because the listings are connected with the user accounts, as demonstrated by eBay's policy to suspend or terminate an account based on alleged intellectual property rights violations, the VeRo reports are "of and concerning" Plaintiff. (TAC ¶ 16.)

Second, Plaintiff adequately pleads that Red Points published the statement to a third party without their authorization or privilege. "'[P]ublic exposure' is not required to state a defamation claim; publication to a third party, in this case eBay, is sufficient." *Eminah Properties LLC v. Energizer Holdings, Inc.*, 531 F. Supp. 3d 593, 607 (E.D.N.Y. 2021). Defendants allegedly submitted the VeRo reports to eBay without attempting to verify the authenticity of the product. (TAC ¶ 28) Because Plaintiff asserts that the reported listings at issue were authentic products, it is assumed for purposes of this motion that Defendants did not contact Plaintiff for authorization to submit these VeRo reports. (TAC ¶¶ 41, 45.)

Third, Plaintiff need only plead negligence since the statements at issue were only made to eBay and "publications directed only to a limited, private audience are matters of purely private concern." *A&E Prods. Group L.P. v. Accessory Corp.*, No. 00-CV-7271 (LMM), 2001 U.S. Dist. LEXIS 20245, at *20 (S.D.N.Y. Dec. 7, 2001) (quoting *Huggins v. Moore.* 94 N.Y.2D 296 (1999)) (internal quotations omitted). In applying the negligence standard, the question becomes "whether the defendants failed to exercise ordinary care in … publishing false statements which defamed [plaintiff], considering the foreseeable danger of injury from the publication and the reasonableness of defendants' conduct in proportion to that danger." *Lee v. City of Rochester*, 174 Misc. 2d 763, 786 *aff'd*, 254 A.D.2d 790, 677 N.Y.S.2d 848 (1998) (quoting *Gaeta v. New York*

*News, Inc.*, 115 Misc. 2d 483,485, *aff'd*, 95 A.D.2d 315 (1983), *rev'd on other grounds*, 62 N.Y.2d 340 (1984) (internal quotation marks omitted) (alteration in original). As a matter of course, when eBay receives a report through its VeRo program the reported listing is removed and the only way to have the listing reinstated is for the complaining party to withdraw the report. (TAC ¶¶ 13, 15.) Because Plaintiff alleges that Defendants failed to take steps to confirm that Plaintiff's listings were counterfeit prior to submitting the VeRo reports, and failed to retract at least one report upon receipt of proof of authentication (i.e., the November 2nd Report), Plaintiff has met their burden at this stage. (TAC ¶¶ 40, 44, 47); *see Sweeney v. Prisoners' Legal Servs. of New York, Inc.*, 84 N.Y.2d 786, 647 N.E.2d 101 (1995) ("failure to investigate […] was, at most, negligent"); *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 281 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015), and *aff'd*, 622 F. App'x 67 (2d Cir. 2015) (finding refusal to retract a statement once proof of its falsity is received to be a permissible factor for consideration in a finding of the heightened standard of actual malice).

Fourth, Plaintiff is not required to plead special harm because Plaintiff has adequately pled a claim for defamation *per se*. "Defamation *per se* has been defined both as statements that cast doubt on a particular quality at the very heart of a profession and statements that impugn the basic integrity of a business." *Kforce, Inc. v. Alden Pers., Inc.*, 288 F. Supp. 2d 513, 516 (S.D.N.Y. 2003) (emphasis in original). "A statement that tends to injure another in his or her trade, business or profession is defamatory *per se*." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012) (citation omitted). "New York law has long recognized that '[w]hen statements fall within' established categories of per se defamation, 'the law presumes that damages will result, and they need not be alleged or proven.'" *Zherka v. Amicone*, 634 F.3d 642, 645 (2d Cir. 2011) (footnote omitted) (quoting *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992)). To plead defamation *per se,*

Plaintiff must allege that the statements "(i) charg[e] plaintiff with a serious crime; (ii) that tend to injure [plaintiff] in his or her trade, business or profession; (iii) [charge] plaintiff [with] a loathsome disease; or (iv) imput[e] unchastity to a woman." *Liberman*, 80 N.Y.2d at 435. Allegations of Red Points' submission of a false VeRo report to eBay are sufficient for showing injury to Plaintiffs' business reputation. *See Eminah Properties. LLC*, 531 F.Supp. 3d at 608 (finding defamation *per se* where a false VeRo report was made, reasoning that such report imputed to plaintiff dishonesty and misconduct in business); *Beauty Beauty USA, Inc. v. Chin Hong Luo*, No. 11-CV-5349, 2011 WL 4952658, at *1 (S.D.N.Y. Oct. 13, 2011) ("Accusations that plaintiff sold 'counterfeit goods,' whether made orally or in writing, would be defamatory *per se*" (emphasis in original)).

Defendants move to dismiss Plaintiff's claim for defamation on two grounds: (1) New York's common interest privilege protects the communication between eBay and Defendants, and (2) Defendants' statements contained within the VeRo report are of opinion and not objective fact. (Def. Br. at 6-11.) For the reasons below, Plaintiff's claim withstands these challenges.

New York state courts are divided as to whether the common interest privilege may be used as a basis for dismissal. *See Hillel v. Obvio Health USA, Inc.,* No. 20-CV-4647 (LAP), 2021 WL 229967, at * (S.D.N.Y. Jan. 21, 2021), *aff'd in part, vacated in part, remanded sub nom. Hillel v. IQVIA, Inc.,* No. 21-666-CV, 2022 WL 905852 (2d Cir. Mar. 29, 2022) ("How this [common interest] privilege operates in practice is somewhat in flux. Recent caselaw [sic] suggests that a plaintiff must plead, as an element of her cause of action, that the allegedly defamatory statement is not privileged. Other caselaw [sic], however, suggests that the privilege operates as an affirmative defense that is not properly resolved on a motion to dismiss. The New York Court of Appeals has not yet reconciled these two lines of cases."). Because the Second Circuit Court of

Appeals cautions against the use of a qualified privilege in deciding a motion to dismiss, and New York courts are split, the Court declines to consider Defendants' privilege argument at this stage. *See Conti v. Doe,* No. 17-CV-9268 (VEC), 2019 WL 952281, at *9 (S.D.N.Y. Feb. 27, 2019) ("the Second Circuit has cautioned district courts against dismissing defamation claims based on the common interest privilege when deciding a Rule 12(b)(6) motion, holding that a privilege is better considered on a motion for summary judgement."); *Fossil Grp., Inc. v. Angel Seller LLC*, No. 20-CV-02441 (HG) (TAM), 2022 WL 9447259 (E.D.N.Y. Oct. 14, 2022) (denying plaintiffs counterclaim on the basis of the common interest privilege because it is better considered on a motion for summary judgement).

"To apply the facts to the legal framework and determine whether a statement is opinion, courts look to several factors, including whether the contested language has a precise meaning that is readily understood, whether the statement can be proven true or false, and whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact." *Bloom v. Fox News of Los Angeles*, 528 F. Supp. 2d 69, 76 (E.D.N.Y. 2007) (internal quotation marks omitted) (citing cases). "A statement of 'mixed opinion' is one that 'implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it.'" *Sweigert v. Goodman,* No. 18–CV-08653 (VEC) (SDA), 2021 U.S. Dist. LEXIS 251325, at *9 (S.D.N.Y. Oct. 29, 2021) (citing *Conti v. Doe*, 535 F.Supp.3d 257, 267 (S.D.N.Y. 2021)). "Statements of mixed opinion are not protected under New York's constitution." *Id.* "The determination of whether a statement constitutes a pure opinion or a mixed opinion is a question of law for the Court" which must be considered with respect to the understanding of a reasonable listener as implying facts to support the proffered opinion. *Cooper*

*v. Templeton*, No. 21-CV-4692 (RA), 2022 WL 4367445, at *7 (S.D.N.Y. Sept. 21, 2022) (citing *Steinhilder v. Alphonse*, 68 N.Y.2d 283, 290 (N.Y. Ct. App. 1986)). Red Points' software automatically reports detected intellectual property infringements to e-commerce websites without requiring their clients to confirm that the listing is of a counterfeit product. (TAC ¶¶ 19, 28.) When Red Points submits these reports to eBay, they certify that they have done so on a good faith basis. (*Id.* ¶ 17.) Because the VeRo reports do not need to be substantiated with proof of infringement (*Id.*), it is reasonable to conclude that even if these reports are statements of opinion, eBay relies on them with the presumption that facts exist which justify the opinion but are unknown to them, and they are thus actionable as mixed opinions.

Accordingly, Defendant's Motion to Dismiss Plaintiff's claim for Defamation is denied.

## II.   *Defendants' Motion to Dismiss Plaintiff's Claim for Tortious Interference with Prospective Business Relations is Granted*

Under New York law, a plaintiff must plead four elements to establish a tortious interference with advantageous business relations claim: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008).

"[T]he plaintiff must allege that it was 'actually and wrongfully prevented from entering into or continuing in a specific business relationship.'" *Evliyaoglu Tekstil A.S. v. Turko Textile LLC*, No. 19-CV-10769 (LJL), 2020 WL 7774377, at *2 (S.D.N.Y. Dec. 30, 2020) (quoting *Von Rohr Equip. Corp. v. Tanner Bolt & Nut Corp.*, No. 17-CV-2913 (NGG) (RER), 2017 WL 5184676, at *7 (E.D.N.Y. Nov. 7, 2017)). Plaintiff alleges only that eBay removed the listings

which Red Points reported as infringing on intellectual property. (TAC ¶¶ 38, 42.) Removal of listings on an e-commerce platform does not constitute harm to the underlying business relationship with the platform. *See Eminah Properties LLC*, 531 F.Supp.3d at 607 (stating that "black marks" placed on a sellers account and the removal of listings are not sufficient to establish an injury to the underlying relationship); *RFP LLC v. SCVNGR, INC.*, 788 F.Supp.2d 191 (S.D.N.Y. 2011) (holding that the underlying relationship was undisturbed despite listings being removed)*.* The underlying relationship appears to remain intact. Plaintiff makes no indication that the nature of their relationship with eBay has been altered by the submission of VeRo reports against their account. Therefore, Plaintiff fails to sufficiently allege how their relationship with eBay was injured to plead a claim for tortious interference.

Because Plaintiff does not sufficiently plead an injury to its underlying business relationship with eBay, Plaintiff's claim for Tortious Interference with Prospective Business Relations is dismissed.

### III.    *Defendants' Motion to Dismiss Plaintiff's False Advertising Claim is Denied*

Section 43(a)(1)(B) of the Lanham Act "permits anyone who 'believes that he or she is likely to be damaged' to [bring a false advertising claim against] a person who 'uses in commerce any word ... or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." *Adweek LLC v. Carnyx Grp. Ltd.*, No. 1:18-CV-09923-GHW, 2019 WL 8405297, at *2 (S.D.N.Y.

June 3, 2019) (quoting 15 U.S.C. § 1125(a)(1)(B)). For the reasons stated below, Plaintiff has sufficiently pled a claim for False Advertising under the Lanham Act.[1]

To plead a claim for False Advertising under the Lanham Act, Plaintiff must allege standing, which is "an element of the cause of action under the statute." *Lexmark*, 134 S.Ct. at 1391 n.6. Plaintiff must also allege "(1) a false or misleading statement; (2) in connection with commercial advertising or promotion that (3) was material; (4) was made in interstate commerce; and (5) damaged or will likely damage the plaintiff." *Sussman–Automatic Corp. v. Spa World Corp.*, 15 F.Supp.3d 258, 269 (E.D.N.Y.2014).

*A.  Standing*

The Supreme Court most recently examined the standing requirement for Lanham Act claims in *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377 (2014). Under *Lexmark*, a False Advertising claim brought under the Lanham Act must first fall into the "zone of interests" the Lanham Act protects, meaning that a claimant must allege "injury to a commercial interest in reputation or sales." *Lexmark*, 134 S.Ct. at 1390. Second, the claim must be "proximately caused" by a violation of the statute; the Court noted that proximate cause requires that the economic or reputational injury "flow[s] directly from the deception wrought by the defendant's adverting," which occurs "when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, 134 S.Ct. at 1377. It follows that a Lanham Act claimant's injury is proximately caused even "where a third party, and not the plaintiff ... relied on it." *Lexmark*, 134

---

[1] Although Plaintiff does not explicitly identify in the TAC whether it is attempting to make a claim under 15 U.S.C. §1125(a)(1)(A) or (B), 15 U.S.C. §1125(a)(1)(A) deals with claims related to trade dress infringement, which Plaintiff does not seem to address in their pleadings. (TAC ¶¶ 73-81.) Plaintiff (correctly) only defends their claim by referencing 15 U.S.C. §1125(a)(1)(B) in their opposition to the motion to dismiss. (ECF No. 33 ("Pl. Opp.") at 14.) Therefore, the Court construes Plaintiff's TAC as advancing their claim for False Advertising under 15 U.S.C. §1125(a)(1)(B).

S.Ct. at 1391 (quotation marks omitted). Likewise, the fact that a step of "consumer[ ] deception" intervenes between the defendant's misrepresentation and the claimant's injury is "not fatal to the proximate-cause showing the statute requires," presuming the claimant alleges there was no "discontinuity" between injury to direct and indirect victims. *See Lexmark.* 134 S.Ct. at 1382.

First, and as noted in detail above, Plaintiff alleges that its commercial interests were injured because Defendants' false advertisements led Defendants' consumers to use Defendants' services to remove Plaintiff's listings of authentic products from eBay. (*See e.g.*, TAC ¶¶ 38-47.) Plaintiff's claim thereby falls into the "zone of interests" the Lanham Act protects, as Plaintiff alleges that the removal of product listings from an e-commerce platform (here, eBay) injured Plaintiff's sales and reputation. (*Id.* ¶ 50.)

Second, Plaintiff sufficiently alleges that Defendants' false advertisements proximately caused this injury to Plaintiff's sales and reputation. Plaintiff, for instance, offers examples of Defendants' advertisements where Defendants advertise that their software identifies and automatically removes counterfeit products that are sold online. (TAC ¶¶ 20-21.) Plaintiff alleges that these advertisements were false and deceptive because Defendants' software reported Plaintiff's authentic products as counterfeits to eBay on multiple occasions. (*Id.* ¶¶ 20-26.) In other words, Plaintiff claims that although Defendants' advertisements indicate that their services reliably detect counterfeit products and automatically remove these products from e-commerce platforms, the product listings that Defendants' software flags and removes are often authentic because their software does not reliably distinguish between authentic and counterfeit products. (*Id.* ¶¶ 20-30.) There is, then, no break in continuity between this purported deceptive advertising and the removal of Plaintiff's product listings from eBay— these listings were removed precisely because Defendants' advertisements that their services reliably identify counterfeit products

allegedly misled their customers into using their software to remove Plaintiff's authentic listings.[2] Plaintiff's alleged injury thereby "flowed directly from the deception wrought by the defendant's adverting." *Lexmark*, 134 S.Ct. at 1377.

### B.  False or Misleading Statement

To plead a false or misleading statement, a claim must raise a plausible inference that the defendants' false advertising is either "literally false" or "likely to mislead or confuse consumers." *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 112 (2d Cir.2010). Here, as suggested above, Plaintiff has sufficiently plead that Defendants made a false or misleading statement. Plaintiff alleges that, despite the claim in Defendants' advertisements that Defendants' software detects and automatically removes counterfeit products from e-commerce platforms, Defendants' software is unable to reliably distinguish between authentic and counterfeit product listings. (*Id.* ¶¶ 20-26.) Therefore, Defendants' advertisements are misleading at best, as they encourage consumers to believe that their services reliably flag and remove only fraudulent product listings from e-commerce platforms. *See UPS Store, Inc. v. Hagan*, No. 14CV1210, 2015 WL 9256973, at *5 (S.D.N.Y. Nov. 18, 2015).

### C.  Commercial Advertising or Promotion

A statement constitutes commercial advertising or promotion if it is: "(1) commercial speech, (2) made for the purpose of influencing consumers to buy defendant's goods or services, and (3) although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public." *Gmurzynska v. Hutton*, 355 F.3d 206, 210 (2d Cir. 2004).

---

[2] Moreover, and despite Defendants' arguments to the contrary, the intervening step of consumer deception (i.e., Defendants' allegedly deceptive advertisements that their software discovers counterfeit products) is "not fatal to the showing of proximate causation required by the statute." *Lexmark*, 134 S.Ct. at 1391

Here, Defendants' advertisements constitute commercial advertising or promotion. The examples of Defendants' advertisements that Plaintiff includes in their TAC, which each broadly advertise that their software successfully (and automatically) detects and removes counterfeit products from e-commerce platforms, are clearly commercial speech intended to influence prospective consumers (here, consumers that sell their products online) to purchase their software. (*Id.* ¶¶ 20-21.) Moreover, the fact that Defendants' advertisements: (1) state that Defendants' software enables an unspecified consumer to "[s]cale [their] brand protection efforts"; and (2) include an example of a client from an unidentified industry that used their software as a success-story, raises at least the plausible inference that these advertisements are part of a broadly disseminated, classic advertising campaign to all sellers with online product listings. (*Id.*)

### D. Materiality

The alleged misrepresentations must also pertain to an "inherent quality or characteristic of the product [at issue]." *Sussman–Automatic Corp.*, 15 F.Supp.3d at 269 (quoting *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir.2001)); *see also Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997). Here, the fundamental quality of Defendants' product is its purported ability to reliably distinguish between online listings of authentic and counterfeit products, and to then flag these listings to the relevant e-commerce platform (here, eBay). (*See, e.g.*, TAC ¶¶ 18-29.). As noted in detail above, the alleged misrepresentations concern exactly this capacity to differentiate a real product from a fake one. Therefore, Plaintiff's allegations satisfy the materiality requirement.

### E. Interstate Commerce

The alleged false advertising must occur "in commerce," 15 U.S.C. § 1125(a)(3), meaning "all commerce which may lawfully be regulated by Congress," § 1127. Statements made in

connection with intrastate activities, if they substantially affect interstate commerce in the aggregate, are actionable. *See Lebewohl v. Heart Attack Grill LLC*, 890 F.Supp.2d 278, 290 (S.D.N.Y.2012) (noting that courts have treated the "in commerce" requirement as "not imposing a stringent limitation"). The Second Circuit "has held that a defendant's wholly intrastate activities will be subject to [the Act's] apparently long reach if those activities may be said to affect plaintiff's business and that business is interstate." *Demetriades v. Kaufmann,* 698 F. Supp. 521, 524 (S.D.N.Y.1988) (citing *Arrow United Indus., Inc. v. Hugh Richards, Inc.*, 678 F.2d 410, 413 n.5 (2d Cir.1982)). Given that the alleged false advertising described above is ostensibly directed at the broad audience of consumers that sell products on e-commerce websites (such as eBay) that operate nationally (and internationally), it undoubtedly occurs "in commerce."

### F.  Damages

Finally, and as already discussed, Plaintiff alleges that their product listings were removed from eBay, the e-commerce website through which they purportedly sell authentic products, as a direct consequence of Defendants' false advertising. (*See e.g.*, TAC ¶¶ 38-47.) Plaintiff has thereby sufficiently pled damages for purposes of its False Advertising claim.

As Plaintiff has sufficiently pled each of the requirements necessary to establish a claim for False Advertising under the Lanham Act, Defendants' Motion to Dismiss this claim is denied.

### IV.   *Defendants' Motion to Dismiss Plaintiff's N.Y. General Business Law § 349 Claim is Granted*

To state a *prima facie* claim under GBL § 349, a plaintiff must allege that a defendant has engaged in: (1) consumer-oriented conduct that is (2) materially misleading, and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice. *See, e.g., City of N.Y. v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616 (2009) (stating that a *prima facie* claim under GBL §

16

349 requires a plaintiff to "demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result"). Defendants contend that Plaintiff has failed to meet this burden because the alleged harm is "too remote" (Def. Br. At 18). A party who has suffered derivative harm does not have standing to bring a claim under GBL § 349. *See Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc*., 3 N.Y.3d 200, 207 (2004) (stating "derivative actions are barred.")

"An injury is indirect or derivative when the loss arises solely as a result of injuries sustained by another party." *Id.* More than "but for" causation is required to state a valid claim under GBL § 349. *Smokes-Spritis.Com*, 12 N.Y.3d at 623.

Here, Plaintiff's injury relies on the alleged deception of Red Points' consumers regarding the ability of their software to differentiate between authentic and counterfeit products. "Unless and until consumers are misled by Defendants' conduct, there is no injury to Plaintiff." *Voters for Animal Rts. v. D'Artagnan, Inc.,* No. 19-CV-6158 (MKB), 2020 WL 9209257 (E.D.N.Y. July 15, 2020), *report and recommendation adopted,* No. 19-CV-6158 (MKB), 2021 WL 1138017, at *22 (E.D.N.Y. Mar. 25, 2021) (finding that "Plaintiff's injury necessarily relies on the injuries sustained by consumers—that is, consumers' deception by Defendants' advertising," and therefore finding Plaintiff's injury to be derivative.) "Plaintiffs must plead that they have suffered actual injury caused by a materially misleading act, not that a misleading act led to further steps which eventually harmed them." *Frintzilas v. DirecTV, LLC*, 731 F. App'x 71, 72 (2d Cir. 2018). Plaintiff cannot circumvent the standing issue by alleging that the deceived consumers incurred no injury. *Id.* Plaintiff's claim is derivative, as it alleges that a misleading act (i.e., Defendants' purportedly deceptive advertising) led to further steps (i.e., one of Red Points' consumers using Red Points to request that eBay remove Plaintiff's product listing) that ultimately harmed Plaintiff. (*Id.*)

Therefore, because Plaintiff's claim is derivative, Plaintiff does not have standing to pursue a claim under GBL § 349,

Accordingly, Plaintiff's claim under GBL § 349 is dismissed.

### V.     Defendants' Motion to Dismiss Plaintiff's Claim for Aiding and Abetting Common Law Unfair Competition is Granted

To state a claim for aiding and abetting a tort, Plaintiff's pleadings must establish that a principal has committed a violation causing injury, and that Defendants were generally aware of their role at the time when substantial assistance was provided to the principal. *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 851 (2d Cir. 2021) ("civil aiding and abetting includes three elements: (1) 'the party whom the defendant aids must perform a wrongful act that causes an injury,' (2) 'the defendant must be *generally aware* of his role as part of an overall illegal or tortious activity at the time that he provides the assistance,' and (3) 'the defendant must knowingly and *substantially assist* the principal violation.'") (quoting *Kaplan v. Lebanese Canadian Bank, SAL,* 405 F. Supp. 3d 525, 534 (S.D.N.Y. 2019), *vacated in part*, 999 F.3d 842 (2d Cir. 2021)).

A claim for aiding and abetting is predicated on the existence of the underlying tort, requiring Plaintiff to also plead the existence of such. To plead common law unfair competition in New York requires a showing that the actor "(1) in commerce, (2) made a false or misleading representation of fact (3) in connection with goods or services (4) that is likely to cause consumer confusion as to the origin, sponsorship, or approval of the goods or services" (5) in bad faith. *Fischer v. Forrest*, No. 14-CV-1304 (PAE), 2015 WL 195822, at *33 (S.D.N.Y. Jan. 13, 2015) (quoting *Naked Cowboy v. CBS*, 844 F.Supp.2d 510, 516 (S.D.N.Y. 2012)).

Plaintiff fails to allege that Red Points' clients are responsible for the underlying tort of common law unfair competition, as it provides no more than conclusory allegations regarding Red

Points' clients commission of this tort. Plaintiff alleges only that "Defendants engage in the anti-competitive, fraudulent and unethical practice of submitting to e-commerce websites unsubstantiated and false reports of counterfeiting" as agents of their clients. (TAC ¶ 91.) Thus, Plaintiff provides no factual allegations supporting that Red Points' clients acted in bad faith in employing Red Points' services to protect their intellectual property.

Accordingly, Plaintiff's claim for Aiding and Abetting Common Law Unfair Competition is dismissed.

### VI.    *Defendants Fee Shifting Counterclaim Pursuant to N.Y. Civ. Rights § 70-a is Denied*

In Defendants' Notice of Motion to Dismiss (ECF No. 31), Defendants ask the Court to impose mandatory fee shifting pursuant to N.Y. Civ. Rights § 70-a. Defendants then *concede* in their Reply Memorandum (ECF No. 35 ("Reply Memo") at 9) that § 70-a is a state procedural rule and therefore not applicable in this Court. *See Allianz Ins. Co. v. Lerner,* 416 F.3d 109, 118 (2d Cir. 2005) ("New York state procedural rules do not apply here to a federal court sitting in diversity"); *Prince v. Intercept*, No. 21-CV-10075 (LAP), 2022 WL 5243417, at *18 (S.D.N.Y. Oct. 6, 2022) (holding that N.Y. Civ. Rights Law § 70-a does not apply in federal court); *Carroll v. Trump*, 590 F. Supp. 3d 575, 586 (S.D.N.Y. 2022) ("Section 70-a is inapplicable in federal court because its substantial basis standard … conflicts with the standards under Federal Rules of Civil Procedure 12 and 56" (quoting *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.,* 551 F. Supp. 3d 408, 431 (S.D.N.Y. 2021) (internal quotation marks omitted)).

Instead, Defendants aver in their Reply Memo that this Court should award fees under N.Y. Civ. Rights § 76-a if they were to prevail on their Motion to Dismiss. (Reply Memo, at 10.) Arguments brought for the first time in a reply brief need not be addressed by the Court. *See ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.,* 485 F.3d 85, 100 n.16 (2d Cir. 2007)

("[W]e decline to consider an argument raised for the first time in a reply brief."); *Sacchi v. Verizon Online LLC,* No. 14-CV-423 (RA), 2015 WL 1729796, at *1 n.1 (S.D.N.Y. Apr. 14, 2015) ("Generally, a court '[does] not consider issues raised in a reply brief for the first time because if a [party] raises a new argument in a reply brief [the opposing party] may not have an adequate opportunity to respond to it'") (citations omitted) (alterations in original).

Accordingly, Defendants request for attorney's fees under N.Y. Civ. Rights § 70-a is denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. The Court DENIES Defendants' Motion as to Plaintiff's claims for Defamation and False Advertisement under the Lanham Act. Defendants' claim for attorney's fees pursuant to N.Y. Civ. Rights § 70-a is also DENIED. However, the Court GRANTS the Motion as to Plaintiff's claims for Tortious Interference with Prospective Business Relations, Violation of NY Gen. Bus. Law § 349, and Aiding and Abetting Common Law Unfair Competition, which are dismissed without prejudice.

As Plaintiff's Third Amended Complaint was the first Complaint for which motion practice occurred, Plaintiff is granted leave to file a Fourth Amended Complaint. Plaintiff will have until July 6, 2023 to do so, consistent with this order. Plaintiff is advised that the Fourth Amended Complaint will replace, not supplement, the Third Amended Complaint, and so any claims they wish to pursue must be included in, or attached to, the Fourth Amended Complaint. Defendants are then directed to answer or otherwise respond by July 20, 2023.

If Plaintiff fails to file a Fourth Amended Complaint within the time allowed, those claims dismissed without prejudice by this order will be deemed dismissed with prejudice. If no Fourth

Amended Complaint is timely filed, Defendants must answer the remaining claims against them on or before July 20, 2023.

      The Clerk of Court is respectfully directed to terminate the motion at ECF No. 31.


Dated: June 14, 2023                           SO ORDERED:

      White Plains, New York

                                              NELSON S. ROMÁN

                                      United States District Judge